534 S.E.2d 757

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Donald McINTOSH, Defendant Below, Appellant.**

No. 26849.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2000.

Decided July 12, 2000.

Dissenting Opinion of Justice Starcher July 13, 2000.

---

Darrell V. McGraw, Attorney General, David P. Cleek, Senior Deputy Attorney General, Charleston, West Virginia, Attorneys for Plaintiff.

Raymond H. Yackel, Esquire, Oliver & Yackel, Franklin D. Cleckley, Morgantown, West Virginia, Attorneys for Defendant.

PER CURIAM:

This is an appeal by Donald McIntosh (hereinafter "Appellant") from an order of the Circuit Court of Monongalia County convicting him of three counts of third degree sexual assault. The Appellant was sentenced

to one to five years on each count, to run concurrently.[1] The Appellant contends that the lower court erred by permitting the introduction of evidence of other bad acts, in preventing cross-examination of a witness concerning her mental health history, and in allowing the conviction to stand despite a variance between the indictment and the testimony. Upon thorough review of this matter, we affirm the convictions rendered below.

## I. Facts

In June 1997, Ms. Erika Miller registered a complaint with the Morgantown, West Virginia, police department regarding harassing telephone calls allegedly made by the Appellant.[2] In the course of the investigation into the telephone calls, Ms. Miller informed the police that the Appellant had been her teacher in the sixth and ninth grades and had traded better grades for sexual favors in 1989 and 1990, including fondling, oral sex, and intercourse. During the investigation, Ms. Miller also informed the police that the Appellant had similarly induced other female students to perform sexual acts in exchange for more favorable grades during the same general time period.[3]

At trial, Ms. Miller testified that the Appellant, while serving as her teacher in the sixth and ninth grades, had expressed his love for her and had informed her that she could improve her grades by meeting him after class. Ms. Miller testified that, during her ninth grade year in 1989 and 1990, she and the Appellant occasionally drove around Morgantown in the Appellant's vehicle as he collected payments for the Dominion Post newspaper. Ms. Miller testified that the Appellant fondled her in November 1989 while she and the Appellant were sitting in the Appellant's vehicle copying answers from written keys to tests. Ms. Miller further testified that the Appellant placed his hand on her breast area and forced Ms. Miller to touch and rub his penis. She testified that the Appellant subsequently unzipped his pants, pushed her seat back, got on top of Ms. Miller, and began to push his penis against her. She explained that he thereafter inserted a finger into her vagina and warned her not to tell anyone about the incidents.

Ms. Miller also testified regarding an incident of oral sex in September 1989, including an incident in which the Appellant requested oral sex from both Ms. Miller and another young woman, Ms. Betty Barefoot. Ms. Miller explained that the Appellant caused her to perform oral sex on him in February 1990 and again in April or May 1990.

Ms. Betty Barefoot testified that she had occasionally ridden home with the Appellant and Ms. Miller while in junior high school in 1989 and 1990. Ms. Barefoot stated that the Appellant once unlocked a school building, escorted Ms. Barefoot and Ms. Miller to a small room, and requested that they both perform oral sex on the Appellant. Ms. Barefoot testified that she declined to perform the act, but that she witnessed Ms. Miller performing oral sex on the Appellant. Ms. Barefoot also testified that she and Ms. Miller would take turns sitting up front in the Appellant's automobile. The Appellant would touch the breast and crotch areas of the girl sitting up front and would require the girl to touch his penis.

1. The Appellant is presently released on postconviction bail pending resolution of this appeal.

2. Ms. Miller was twenty-two years of age at the time the harassing telephone calls were allegedly made. Although the Appellant had allegedly telephoned Ms. Miller during her high school years and asked her to meet him, she had refused. Ms. Miller met the Appellant by chance at a local shopping area, and he provided her with his voice mail number. She later called him to request money since she was in financial difficulty. The Appellant sent her money and allegedly initiated the harassing telephone calls two weeks later.

3. Several parents had registered complaints with the Board of Education against the Appellant in 1985 and 1988 regarding inappropriate touching, hugging, and requesting the female students to sit on his lap. In response to these complaints, the Appellant had been placed on improvement plans which included an admonition that the Appellant was not to have physical contact with students, was not to be alone with a child in any part of the building, and was not to engage in one-on-one conversations with a child.

Ms. Brenda Frum testified that she was in a third or fourth grade class taught by the Appellant in 1976. She testified that she had become ill while on the playground and that she requested permission from the Appellant to go inside and telephone her mother. She testified that the Appellant had suggested that she would feel better if she went inside and put her head down. She complied, and the Appellant later joined her in the school. She testified that the Appellant began rubbing her shoulders, playing with her hair, and moving his hands in a down and forward motion on her chest. She testified that she had become uncomfortable and had asked again to telephone her mother. The Appellant indicated to her that what he was doing would make her feel better. He also advised her not to tell anyone about the incident because she would get into trouble. She further explained that he continued to hug her throughout the school year for getting good grades.

Ms. Lisa Fowler testified regarding an event which occurred while she had the Appellant for eighth grade in 1994. She had approached the Appellant and asked how she could improve her grade in his class. He advised her to talk to him after class in the teachers' lounge. She and two other girls then met him after class in the lounge. She testified that the Appellant told her that the only way to improve her grade was to perform sexual activity with him. One of the other girls allegedly present during this conversation testified that she could not remember the incident due to her poor memory.

Ms. Dawn Moury testified that she had the Appellant for fifth grade in 1982. She explained that the Appellant would ask her to sit on his lap while she waited for her mother to arrive after school. She stated that the Appellant would place his hands on her shoulders, back, waist, breasts, and between her thighs.

The Appellant did not provide an alibi defense; he simply denied that he had inappropriately touched any student. The Appellant called witnesses to testify concerning his truthful and honest nature, and fellow teachers also testified that the Appellant had maintained a good rapport with his students. The Appellant was convicted of three counts of sexual assault in the third degree in September 1998 and was sentenced to three one-five year sentences to run concurrently. A motion for a new trial was denied and that final order on the jury's verdict was entered on March 15, 1999.

## II. Discussion

### A. West Virginia Rule of Evidence 404(b)

The Appellant contends that the lower court erred by admitting evidence of "other bad acts" under Rule 404(b) of the West Virginia Rules of Evidence [4] and/or *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). The Appellant argues that most of the evidence was irrelevant and that "all the evidence in its cumulative form was unfairly prejudicial." Further, the Appellant contends that the lower court inappropriately merged the principles of Rule 404(b) and the principles articulated in *Edward Charles L.* Finally, the Appellant advocates reversal of *Edward Charles L.*

### 1. Standard of Review

In *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), the defendant had argued that prejudicial evidence with limited probative value had been presented to the jury. In assessing the defendant's contentions, we delineated the following standard of review for Rule 404(b) evaluations:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is

**4.** Rule 404(b) of the West Virginia Rules of Evidence provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403. *See State v. Dillon,* 191 W.Va. 648, 661, 447 S.E.2d 583, 596 (1994); *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986).

196 W.Va. at 311, 470 S.E.2d at 629–30 (footnote omitted).

This Court has specified that a circuit court abuses its discretion in admitting Rule 404(b) evidence only where the court acts in an "arbitrary and irrational" manner. *State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994). We specified as follows:

Our function on this appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*Id.*

In *LaRock,* we noted that "[t]he balancing of probative value against unfair prejudice is weighed in favor of admissibility and rulings thereon are reviewed only for an abuse of discretion." 196 W.Va. at 312, 470 S.E.2d at 631. This Court "applies a reasonableness standard and examines the facts and circumstances of each case." *Id.* Further, this Court "reviews disputed evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effects." *Id.*

### 2. Guiding Precedent

■ In syllabus point one of *Edward Charles L.,* we acknowledged the fundamental principles of Rule 404(b), as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W.Va.R.Evid. 404(b).

183 W.Va. at 643, 398 S.E.2d at 125, Syl. Pt. 1.

In *State v. Finley,* 177 W.Va. 554, 355 S.E.2d 47 (1987), we recognized the general exclusionary purpose of the rule, as follows:

The purpose of the rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other crimes, and to preclude the inference that because he had committed other crimes previously, he was more liable to commit the crime for which he is presently being indicted and tried.

*Id.* at 556, 355 S.E.2d at 49.

■ In syllabus point two of *Edward Charles L.,* this Court applied the general principles of Rule 404(b) to cases involving child sexual assault or abuse victims, and explained as follows:

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled.

183 W.Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2.

■ This Court enumerated specific guidelines for evaluating Rule 404(b) evidence in syllabus point one of *McGinnis,* directing as follows:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evi-

dence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

193 W.Va. at 151, 455 S.E.2d at 520, Syl. Pt. 1.

■ In syllabus point two of *McGinnis*, this Court further explained the requirements for trial court evaluation, explaining as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W.Va. at 151, 455 S.E.2d at 520, Syl. Pt. 2.

■ This Court expressed in *LaRock* that "guilt or innocence of an accused must be established by evidence relevant to the particular offense being tried, not by showing a defendant was engaged in other acts of wrongdoing." 196 W.Va. at 311, 470 S.E.2d at 630. We concurrently recognized, however, that "there are times that 'other crimes' evidence is admissible if a trial court can take adequate measures to guarantee the evidence will not be misused." *Id.* In syllabus point three of *LaRock*, we held:

> It is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction.

*Id.* at 299, 470 S.E.2d at 618, Syl. Pt. 3.

### 3. Lower Court Ruling and Limiting Instruction

In evaluating the State's motion in limine regarding introduction of the other crime evidence, the lower court in the present case specifically engaged in a Rule 403 [5] balancing evaluation, finding that "the other crimes evidence is probative of a material issue other than character." The lower court further identified "that the evidence tends to establish a common scheme or plan on the part of the Defendant and the Defendant's lustful disposition toward teenage girls who are his students." The lower court concluded as follows:

> Second, the other crime evidence is similar enough in nature to the matters in issue. Review of each of the instances

---

**5.** Rule 403 of the West Virginia Rules of Evidence provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*

reported by the six (6) witnesses reveals a striking similarity in the circumstances of each incident. Furthermore, the Court finds that the evidence submitted by the State is close enough in time to the matter in issue, even thought the other "bad acts" occurred over a period of one (1) to thirteen (13) years.

The lower court explained that it had carefully considered the cases cited by both parties and found: "Consideration of that authority in light of the facts and circumstances of this case convinces the Court that the evidence submitted by the State is admissible primarily due to the continuing nature of the defendant's conduct." "[T]aken together, these incidents would appear to show a rather consistent pattern of conduct on the part of the Defendant toward teenage women in his charge as a teacher."

The lower court also provided the jury with a limiting instruction, drafted by the Appellant, informing the jury that it could not consider the other evidence as proof of the current charge, but only for the limited purpose of showing scheme or design or a lustful disposition toward teenage girls. Although there was no objection to the limiting instruction at trial and the instruction as given was actually submitted by the Appellant, the Appellant contends on appeal that the limiting instruction he tendered to the court contained an "obvious shortcoming." Specifically, the Appellant maintains:

> [B]y its inclusion of the term 'lustful disposition,' it expressly allowed the jury to find the defendant had the propensity to engage in sexual misconduct. Also, the instruction failed in specific language to admonish the jury that the sexual misconduct may not be considered as a basis for an inference that the defendant acted in conformity with the individual's extrinsic conduct or with the indicated character.

In syllabus points one and two of *McGinnis*, as discussed above, this Court explained that a lower court should instruct the jury on the limited and specific purpose for which evidence has been admitted pursuant to Rule 404(b). We explained that "[w]e deem the giving of a limiting instruction and its effectiveness significant not only in deciding whether to admit evidence under Rule 404(b), but the absence of an effective limiting instruction will be considered by us on appeal in weighing the prejudice ensuing from the erroneous admission of Rule 404(b) evidence." *McGinnis*, 193 W.Va. at 156–57, 455 S.E.2d at 525–26. The limiting instruction in the present case, given as each Rule 404(b) witness was presented, provided as follows:

> Ladies and gentlemen, I'm going to once again read the limiting instruction that I read earlier with regard to this testimony. You have heard testimony concerning alleged conduct or other acts of the defendant which are not charged in this indictment in the testimony of this witness. You are instructed that this testimony is not admitted as proof of the defendant's current charge. The testimony is admitted for a limited purpose only, and it may be considered by you in only deciding whether a given issue or element relevant to the present charge has been proven. In this instant [sic], the testimony of the other sexual misconduct of the defendant may be considered only as it relates to the issues of the State establishing a common scheme or plan on the part of the defendant or the defendant's lustful disposition towards teenage girls. Accordingly, this testimony may be considered by you only for the limited purpose just identified for which it is admitted. You may not use this testimony in consideration of whether the State has established the crimes charged in the indictment.

This instruction was drafted and submitted by the Appellant and filed on October 5, 1998. The instruction was given to the jury, verbatim, in the final charge to the jury and was read by the lower court after the presentation of each Rule 404(b) witness. The Appellant presented no objection to his own instruction; the trial court was not alerted to any perceived infirmity or lack of clarity in the instruction.

 Failure to object to this instruction at the lower level effectively waived any right the Appellant may have had to alleged deficiency in his own instruction. As we found in *State v. Miller*, 194 W.Va. 3, 459

572

S.E.2d 114 (1995), "[o]ur survey of cases in this esoteric procedural corner of the law convinces us that the defendant waived any issues she might have had regarding an improper or insufficient jury charge." *Id.* at 19, 459 S.E.2d at 130. In *United States v. Lakich,* 23 F.3d 1203 (7th Cir.1994), trial counsel had been provided the opportunity to review the issue of appropriate jury instructions regarding entrapment. The court elicited comments from counsel and read its proposed instruction to them; both counsel thereafter explicitly agreed to the court's instruction. The *Lakich* court determined that the defendant had waived any objections to the instruction. *Id.* In syllabus point two of *State v. Mullins,* 171 W.Va. 542, 301 S.E.2d 173 (1982), we held: " ' "The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection." ' Syllabus Point 3, *State v. Gangwer,* [169] W.Va. [177], 286 S.E.2d 389 (1982)." In syllabus point one of *Maples v. West Virginia Dept. of Commerce, Div. of Parks and Recreation* 197 W.Va. 318, 475 S.E.2d 410 (1996), we succinctly stated: "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."

■ We fail to discern any constitutional deficiency in the instruction as proposed by the Appellant and given by the lower court. While it did not specifically address the impermissible inference stated in *Finley,* we find that the instruction as presented adequately protected the Appellant's rights and satisfied the requirement that a limiting instruction inform the jury of the limited purpose for which the testimony may be considered pursuant to Rule 404(b). Moreover, we find that the Appellant waived any objection to the instruction given in the proceedings below.

### 4. Analysis

■ The probative value of other bad act evidence is not completely nullified by the fact that the other sexual assaults occurred within four, seven, and thirteen years of the crimes charged. This Court has recognized that "the decision on remoteness as precluding the admissibility of evidence is generally for the trial court to determine in the exercise of its sound discretion." *State v. Gwinn,* 169 W.Va. 456, 472, 288 S.E.2d 533, 542 (1982). However, as we stated in *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945):

[A]n abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material.

*Id.* at 311–12, 36 S.E.2d at 416 (citing *State v. Yates,* 21 W.Va. 761 (1883)). In syllabus point five of *Yuncke,* this Court explained:

"Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of a sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."

128 W.Va. at 300, 36 S.E.2d at 411, Syl. Pt. 5. *See State v. Duell,* 175 W.Va. 233, 332 S.E.2d 246 (1985). Questions concerning remoteness of evidence are left to the sound discretion of the trial court and are subject to challenge only for clear abuse of discretion. *Goodman v. State,* 601 P.2d 178, 184 (Wyo. 1979).

■ In syllabus point six of *Gwinn,* we held as follows: "As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." 169 W.Va. at 457, 288 S.E.2d at 535; *see State v. Welker,* 178 W.Va. 47, 52, 357 S.E.2d 240, 245 n. 2 (1987). "The admissibility of evidence concerning prior bad acts under rule 404(2) must be determined upon the facts of each case; no exact limitation of time can be fixed as to when prior acts are too remote to be admissible." *State v. Burdette,* 259 Neb. 679, 697, 611 N.W.2d 615 (2000); *see also State v. White,* 244 Neb. 577, 508 N.W.2d 554 (1993), *overruled on other grounds, State v. Burlison,* 255 Neb. 190, 583

N.W.2d 31 (1998). "While remoteness in time may weaken the probative value of evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence." *Burdette*, 259 Neb. at 697, 611 N.W.2d at 630–31 (citing *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990)). In *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989), the Nebraska court explained:

> [R]emoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence under Rule 404(2) and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible.

*Id.* at 772; *accord State v. Driggers*, 554 So.2d 720 (La.Ct.App.1989); *State v. Howard*, 520 So.2d 1150 (La.Ct.App.1987), *writ denied*, 526 So.2d 790 (La.1988); *State v. Tecca*, 220 Mont. 168, 714 P.2d 136 (1986); *State v. Brown*, 280 N.C. 588, 187 S.E.2d 85, *cert.* denied, 409 U.S. 870, 93 S.Ct. 198, 34 L.Ed.2d 121 (1972); *State v. Bolden*, 257 La. 60, 241 So.2d 490 (1970); *State v. Cupit*, 189 La. 509, 179 So. 837 (1938).

In *Cooper v. State*, 173 Ga.App. 254, 325 S.E.2d 877 (1985), the court admitted the testimony of the defendant's adult daughters regarding acts committed by the defendant against them nineteen years prior to the prosecution of the defendant for incest involving the defendant's granddaughters. In *State v. Maestas*, 224 N.W.2d 248 (Iowa 1974), a case involving the defendant's prosecution for sexual offenses allegedly committed against a younger daughter, the court permitted testimony of an older daughter concerning acts committed upon her by her father, the defendant, six to ten years previously. *See Ortiz v. State*, 188 Ga.App. 532, 374 S.E.2d 92 (1988); *Staggers v. State*, 120 Ga.App. 875, 172 S.E.2d 462 (1969); *State v. Moore*, 120 Idaho 743, 819 P.2d 1143 (1991); *State v. Mink*, 146 Wis.2d 1, 429 N.W.2d 99 (1988) *review denied*, 147 Wis.2d 889, 436 N.W.2d 30 (1988); *see also* W.A. Harrington, LL.B., Annotation, *Remoteness in Time of Other Similar Offenses Committed by Accused as Affecting Admissibility of Evidence Thereof in Prosecution for Sex Offense*, 88 ALR3d 8 (1978). In *State v. Jackson*, 625 So.2d 146 (La.1993), the court noted that "[t]he defendant will unquestionably be prejudiced by this evidence as he will have to defend charges based on actions that occurred 15 to 24 years ago. However, such prejudice does not outweigh the probative value of the evidence." *Id.* at 152.

In *Britton v. State*, 845 P.2d 1374 (Wyo. 1992), the Wyoming Supreme Court explained:

> [t]he test for remoteness cannot be a mechanical process based only on the amount of time that elapsed between the prior act and the present offense.... Questions concerning remoteness of evidence are left to the sound discretion of the trial court and are subject to challenge only for clear abuse of discretion.

*Id.* at 1376 (citations omitted); *see also United States v. Scott*, 701 F.2d 1340, 1345–46 (11th Cir.1983) *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983); *United States v. Foley*, 683 F.2d 273, 278 (8th Cir. 1982) *cert. denied*, 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982) (finding eleven years acceptable; in determining whether evidence is too remote, the court should apply a reasonableness standard); *United States v. Engleman*, 648 F.2d 473, 479 (8th Cir.1981) (finding thirteen years acceptable); *Gezzi v. State*, 780 P.2d 972 (Wyo.1989) (upholding admissibility of evidence of acts going back seven or eight years).

Similarly, in *Yager*, the Nebraska court reasoned that evidence of the defendant's "other sexual contacts with young males was highly probative on the issue of ... [his] sexual arousal or gratification, as well as his intent and motive, and to establish that it was no accident that he touched the victim's penis." 461 N.W.2d at 746. Recognizing the evidence as prejudicial, the Nebraska court explained: " 'Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only 'unfair prejudice' with which ... [Rule 404(b) is] concerned.' " *Id.*, (quoting *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300, 306 (1984)).

The inherent impediment to formulating a precise test for the application of Rule 404(b) was addressed in Weinstein's Evidence, quoted as follows in *Edlin v. State*, 533 So.2d 403 (Miss.1988):

Although all American jurisdictions agree that no evidence may be introduced which seeks solely to prove that the accused has a criminal disposition, the question of when evidence of a particular [bad] act may be admitted is so perplexing that the cases sometimes seem as numerous "as the sands of the sea," and often cannot be reconciled. In the discussion that follows any generalization should be regarded as suspect, for though it is easy to criticize any given case, it is impossible to verbalize a formula which can be applied with any precision. The factors in each case are so varied and unique, and the counter-thrusting pressures—constitutional and otherwise—so great, that in some instances the courts are thrown back to suggesting that the only requisite is that the decision accord with fundamental notions of fairness. Yet some aid to fairness is afforded by analyzing each proffer of other crime proof to determine what evidential hypotheses the jury is expected to use, and weighing the probative force of the line of proof against the need of the prosecutor and the risks specified in Rule 403. The more reason there is in the decision to admit or exclude, the more apt it is to be fair.

*Id.* at 407 (quoting 2 Jack B. Weinstein and Margaret A. Berger, Federal Evidence, paragraph 404[08], at 404–53 to 404–54 (1986) (footnotes omitted)).

▇▇▇ Upon review of the present matter, we find no clear error in the lower court's determination that there was sufficient evidence to show that the other bad acts actually transpired. We also find that the lower court properly deemed the evidence admissible for a legitimate purpose, under a Rule 404(b) analysis, to demonstrate the defendant's intent, motive, malice, common scheme, plan, and the absence of accident.[6]

Employing the principles established in *Edward Charles L.*, the lower court properly deemed the evidence admissible for the other stated purpose of showing the defendant's lustful disposition toward teenage girls who were his students. *See* 183 W.Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2. Further, we conclude that the lower court did not abuse its discretion in finding that the probative value of the other bad acts evidence was not substantially outweighed by the danger of unfair prejudice to the Appellant.

The other bad act evidence in the present case involved substantially similar conduct, similar locations, similar circumstances, and similar methods to the offenses charged. "The thread which ties the prior acts to the crime in question is the use of young girls to achieve sexual gratification." *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676, 688 (1992). The common scheme, plan, and lustful disposition were aptly demonstrated in the present case by evidence of other acts, and the resulting image depicts a male school teacher exploiting young female students for his personal sexual gratification. The portrait reveals a teaching career marked by repeated instances of identifying students in need of academic or personal assistance and seizing the occasion to transform the difficulties suffered by those students into opportunities for lustful advances and carnal pleasure.

We are not persuaded by the Appellant's contention regarding the absence of compatibility between Rule 404(b) and *Edward Charles L.* Rule 404(b) and *Edward Charles L.* must be examined concurrently by a lower court confronted with the issue of admissibility of collateral acts in a child sexual assault or abuse case. *Edward Charles L.* speaks directly and specifically to the issue of Rule 404(b) application to these types of cases, and evaluation under the principles identified in that case is imperative. Thus, contrary to the assertions of the Appellant and his characterization of *Edward Charles L.*, the lower

---

**6.** The list of "other purposes" for which evidence of other crimes or uncharged misconduct is admissible under Rule 404(b) is not exhaustive and is illustrative only. "[T]he exceptions to the admission of collateral crimes listed in the rule are

not meant to be exhaustive." *State v. Dolin,* 176 W.Va. at 693, 347 S.E.2d at 213; *see State v. Hanna,* 180 W.Va. 598, 378 S.E.2d 640 (1989); *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982).

court did not inappropriately merge the principles of Rule 404(b) and *Edward Charles L.* Quite simply, the lower court found the evidence admissible under both (1) the general principles of Rule 404(b) permitting evidence showing common scheme or plan, and (2) the more case-specific analysis of *Edward Charles L.* permitting collateral acts showing lustful disposition. We affirm the lower court's judgments regarding the Rule 404(b) issues, and we decline the Appellant's invitation to overrule *Edward Charles L.*

### B. Cross-examination of Ms. Brenda Frum Regarding Mental Health History

The Appellant also alleges that the lower court erroneously prevented the Appellant from cross-examining prosecution witness Ms. Brenda Frum regarding her mental health history, allegedly including visitation to a domestic violence center and other counseling on undisclosed dates. The precise nature of the counseling and the underlying reasons for seeking counseling remain unknown.

Prior to trial, the Appellant had requested information regarding Ms. Frum's mental history, based upon a reference in Ms. Frum's pretrial statement.[7] Despite defense counsel's request for any additional information possessed by the State, the State did not provide any information to the Appellant prior to trial.[8]

At trial, the State initiated inquiry into the issue by requesting a bench conference and asking the lower court to prevent the defense from questioning Ms. Frum concerning her mental health history. Specifically, the State explained:

[W]e wanted to clarify if Ms. Frum's statement—she talks about at some point receiving some treatment for mental health.... [W]e wanted to know if the Court—move the Court to prohibit that to

being cross-examined for cross-examination purposes. We don't think that has any bearing on her credibility. As far as I can tell, these problems are some years back and are not current, and so they wouldn't have any bearing on her credibility at that time. We have not taken any steps to obtain her records, and we don't have that information, and we just think it would be unfair to cross-examine this witness on that mental health history.

When the lower court asked the Appellant's counsel whether he had intended to cross-examine Ms. Frum concerning her mental health issues, he responded: "Well, I was going to basically do a question concerning what you were there for. What did you receive the treatment for. She brought it up herself, and I don't know. I couldn't get those records." The Appellant's counsel also alluded to a letter he had sent to the State the prior week "about Ms. Frum, asking [the State] to make the inquiry and provide me anything that had happened." The Appellant's counsel indicated that the State "apparently has not received that, and so it's an issue up in the air." The lower court ruled that Appellant's counsel could "make inquiry as long as it relates only to her present situation." The lower court explained: "As far as stuff that happened years ago or that is not ongoing, no." The court continued: "Obviously, if there's something going on that might affect her credibility right now, he's entitled to know it."

Subsequent to additional discussion concerning whether the burden was upon the defense to prove that something in the mental health history would affect credibility, the lower court ended the discussion by stating: "I'm not going to let you get into it. It's too late. So I guess we're back where I started from." The Appellant's counsel said, "No questions?" The lower court answered, "No questions."

---

7. The pretrial package included references to a counseling appointment at the Rape and Domestic Violence Information Center in Morgantown, West Virginia, in February 1996.

8. There is no indication on appeal that the State possessed any additional information regarding Ms. Frum's mental health history. The Appellant does assert, however, that the State intentionally failed to respond to defense counsel's inquiries regarding that issue.

### 1. Preservation of Error

■ The State maintains that because no effort was made by Appellant's counsel to vouch the record regarding this mental history issue and no *in camera* examination [9] was requested, the Appellant waived the right to protest this ruling on appeal. In *State v. McClure,* 184 W.Va. 418, 400 S.E.2d 853 (1990), this Court addressed a situation in which defense counsel had been prevented from questioning a State witness regarding suspected prejudice against the defendant. The *McClure* Court relied upon syllabus point one of *Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980), as follows, to conclude that defense counsel had failed to preserve the issue for appellate review:

If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.

*See also* Syl. Pt. 8, *Torrence v. Kusminsky,* 185 W.Va. 734, 408 S.E.2d 684 (1991). We expressed in *McClure* that "[t]he failure of a party to preserve the rejected evidence essentially precludes this Court from determining whether the rejection constitutes reversible error." 184 W.Va. at 425, 400 S.E.2d at 860. We concluded that the defendant in *McClure*

failed to vouch the record and failed to preserve the evidence otherwise. In the absence of vouching, this Court cannot determine whether the court's ruling was prejudicial, and in line with the ruling in syllabus point 1 of *Horton v. Horton,* supra, the Court believes that it has been effectively precluded from reviewing the question presented by the defendant.

184 W.Va. at 425, 400 S.E.2d at 860.

### 2. Discretion of Trial Judge

■ In syllabus point four of *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982), we delineated basic rules of cross-examination, as follows:

Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

This Court also specified the standard of review for allegations of errors in cross-examination in the syllabus of *State v. Wood,* 167 W.Va. 700, 280 S.E.2d 309 (1981):

"The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice." Syl. pt. 4, *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956).

We also specified that "[t]he discretion of the trial court includes whether a witness' testimony can be impeached by the introduction of evidence of a psychiatric disability." *State v. Allman,* 182 W.Va. 656, 658, 391 S.E.2d 103, 105 (1990).

---

9. In *State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719 (1993), the prosecutor had provided a defendant accused of sexual assault with information indicating that the complainant had a history of psychiatric problems that might affect her credibility. The defendant moved for an in camera inspection of the complainant's past mental health records, and the trial court found that the defendant had advanced sufficient cause for an *in camera* inspection to determine if the records contained evidence that would be material to the defendant. 499 N.W.2d at 721. The Appellant in the present case references the potential for an in camera hearing in his brief, but he appears to assume that the burden for suggesting such hearing was upon the lower court at trial. The Appellant forwards no explanation for his own failure to request such action at trial, except the following sentence: "Because the trial court ruled that no question on this subject could be asked, the ruling relieved the defense of any obligation to attempt an offer of proof." The Appellant cites no authority for that proposition.

Thus, the establishment of parameters of cross-examination is within the sound discretion of the lower court. Absent manifest abuse or injustice, this Court upon appellate review is not to disturb the resolutions of the lower court. The State maintains that the Appellant in the present case essentially sought to embark on a fishing excursion during cross-examination. The State also emphasizes the absence of any indication, other than the rather innocuous pretrial statement regarding counseling, that Ms. Frum was not a credible witness or that her statements were false or even suspect. There was also no indication that the State had any particular document or any evidence that could have been provided to the defense.

 Moreover, even the Appellant recognizes that the burden of proof is generally upon the party seeking to use the evidence in an attempt to prove that the mental disability is sufficient to affect credibility. We have also recognized the "sensitive nature of the evidence and the potential for abuse" and have "required a showing that the psychiatric disorder affects the credibility and that an expert has had a sufficient opportunity to make the diagnosis of psychiatric disorder before the evidence can be used to impeach a witness." *Id.* at 658, 391 S.E.2d at 105. In syllabus point five of *State v. Harman,* 165 W.Va. 494, 270 S.E.2d 146 (1980), we held as follows:

Evidence of psychiatric disability may be introduced when it affects the credibility of a material witness' testimony in a criminal case. Before such psychiatric disorder can be shown to impeach a witness' testimony, there must be a further showing that the disorder affects the credibility of the witness and that the expert has had a sufficient opportunity to make the diagnosis of psychiatric disorder.

 Upon thorough examination of the cross-examination issue, we conclude that the Appellant failed to adequately preserve any alleged error for appeal. The Appellant failed to vouch the record regarding the rejected issues and failed to request an *in camera* hearing to assess the validity of his concerns. Further, even if the alleged error had been properly preserved for appeal, we are constrained to observe our limitations in the scope of review of exclusions from evidence. We have consistently emphasized the significant discretion afforded to trial courts in fashioning appropriate parameters of cross-examination. In evaluation of the lower court's exclusion, we find no manifest abuse or injustice regarding the scope of cross-examination of Ms. Frum. We are forced to this conclusion notwithstanding the obvious lack of specific information available to the Appellant with which to vouch the record or frame a proffer. The Appellant could have requested the opportunity to conduct cross-examination *in camera* so that all concerned could have been better informed regarding the nature of any prior mental health problems and thereby developed a more adequate record.

 Additionally, even if we were to find error in the limitation of cross-examination, we have consistently held that erroneous evidentiary rulings alone do not necessitate reversal. *State v. Blake,* 197 W.Va. 700, 478 S.E.2d 550 (1996). This Court is "obligated to reverse where the improper exclusion of evidence places the underlying fairness of the entire trial in doubt or where the exclusion affected the substantial rights of a criminal defendant." *Id.* at 702, 478 S.E.2d at 552, Syl. Pt. 4, in part. "Making this determination involves the assessment of the likelihood that had the jury heard the excluded evidence, its outcome would have been affected." *Id.* at 709, 478 S.E.2d at 559. Rule 103(a) of the West Virginia Rules of Evidence provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." *Id.*

Under Rule 103(a), to warrant reversal, two elements must be shown: error and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the outcome of the trial. Stated conversely, error is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it.

*Reed v. Wimmer,* 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995).

If it were conceded that error occurred in the limitation of cross-examination, and that such error was properly preserved, we would most likely view the error as harmless. Given the extensive evidence of direct sexual transgressions against the victim of the crimes charged, as well as the testimony of numerous other victims which demonstrated a particularly probative history of similar transgressions, the exclusion of the mental health history of one witness could scarcely prejudice the substantial rights of the Appellant, and we discern no reasonable possibility that the exclusion affected the outcome of the trial.

### C. Variance Between Indictment and Proof

The Appellant also alleges that a fatal variance existed between the indictment and the proof regarding the dates of the alleged sexual assaults. The variances were as follows: Count I of the Indictment alleged oral sex in November 1989; the testimony indicated oral sex in September 1989. Count II of the Indictment alleged sexual intrusion in December 1989; the testimony indicated sexual intrusion in November 1989. Count III of the Indictment alleged oral sex in February 1990; the testimony indicated oral sex in February 1990 and April or May 1990.

In syllabus point four of *State v. Chaffin,* 156 W.Va. 264, 192 S.E.2d 728 (1972), we explained: "A variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where time is not of the essence of the crime charged." In syllabus point seven of *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982), we explained that "[t]he variance between the indictment and the proof is considered material where the variance misleads the defendant in presenting his defense to the charge and exposes him to the danger of being put in jeopardy again for the same offense." *See also State v. Crowder,* 146 W.Va. 810, 836, 123 S.E.2d 42, 57 (1961); *see State ex rel. State v. Reed,* 204 W.Va. 520, 514 S.E.2d 171 (1999).

In syllabus point three of *State v. Johnson,* 197 W.Va. 575, 476 S.E.2d 522 (1996), this Court stated:

If the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment. If the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury. However, if the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error.

The specific variance in the present case relates only to the dates upon which the events allegedly occurred, and an alibi defense was not attempted. As articulated in syllabus point four of *Chaffin,* quoted above, a variance regarding the "time of the commission of a crime does not constitute prejudicial error where time is not of the essence of the crime charged." 156 W.Va. at 264, 192 S.E.2d at 729, Syl. Pt. 4, in part. Time was not of the essence of the crime charged in this case. We therefore decline to reverse this case on the basis of these variances.

Affirmed.

STARCHER, Justice, dissenting.

(Filed July 13, 2000)

Based on the record before us, I have no doubt that the appellant is factually guilty of the very serious crime with which he was charged—but based on that same record, he clearly did not get a fair trial. I dissent to show my displeasure with the direction the majority of this Court continues to take in applying *W.V.R.E.* 404(b).

Where a defendant *admits* touching a child on their sexual areas, but *denies* that the touching was for a sexual purpose, other instances of clearly non-accidental sexual touching might be admissible under 404(b)—

to show the defendant's actual plan and motive. That appears to be the case in the *Yager* case cited by the majority, where the court held that such evidence was admissible "to establish that it was no accident that [the defendant] touched the victim's penis." But in the instant case, the defendant *denied* all touching, so his motive was not a separate issue. Under these circumstances "other crimes" evidence should not be admissible under 404(b).

The appellant makes telling legal points in his brief on appeal about *Edward Charles L.* that I cannot improve upon, so I quote them *verbatim:*

> [T]he exception adopted by this Court in *Edward Charles L.* is premised upon the notion that a *child victim's credibility* needs enhancement. Specifically, this Court stated:
>
> > We find this rationale to be particularly applicable in cases involving child victims. This is evident since these cases generally pit the child's credibility against an adult's credibility and often times an adult family member's credibility. Since sexual abuse committed against children is such an aberrant behavior, most people find it easier to dismiss the child's testimony as being coached or made up or concluded that any touching of a child's private parts by an adult must have been by accident. In addition, children often have greater difficulty than adults in establishing precise dates of sexual abuse, not only because small children don't possess the same grasp of time as adults, but because they obviously may not report acts of sexual abuse promptly, either because they are abused by a primary care-taker and authority figure and are therefore unaware such conduct is wrong, or because of threats of physical harm by one in almost total control of their life. In most cases of sexual abuse against children by a care-taker or relative, the acts of sexual abuse transpire over a substantial period of time, often several years. Consequently, under the existing collateral acts rule, a child victim is unable to present the complete record of events

forming the context of the crime. Lastly, there is a common misconception that children have a greater propensity than adults to imagine or fabricate stories of sexual abuse. Research indicates, however, that absent coaching, children are far less likely to lie about matters in the sexual ream than adults, and that absent sexual experience there is little means by which children can imagine sexual transactions. In consideration of all these factors, the probative value of such testimony far outweighs the potential for unfair prejudice.

> [In Mr. McIntosh's case] the victim was an adult at the time of trial. She suffered from only those infirmities possessed by the ordinary witness under similar circumstances. *The justification advanced in Edward Charles L. for the adoption of the "lustful disposition" exception simply does not apply to this case.* Inherent probativeness and inherent prejudice weighs in favor of limiting the scope and range of *Edward Charles L.* to the narrow facts of the case. Even if relevant, third party misconduct evidence has only marginal probative value. By contrast the danger of misuse and unfair prejudice from such testimony is substantial. Clearly, alleged sexual misconduct with children is inherently inflammatory. Even if the acts never took place or it was shown to be merely a joke, most jurors would condemn the defendant merely for putting himself in a position for such an allegation to be made. Undoubtedly, this type of evidence would enhance the case of the prosecution because of it persuasive quality. Nonetheless, it should be excluded when offered for this credibility purpose because it may unduly influence the jury and deny the accused a fair opportunity to defend against the particular charge.

(Emphasis added.)

One could write a dissertation on how Rule 404(b), *McGinnis,* and now *Edward Charles L.* have become a "runaway train" in some of our courts, when judges are tempted to abandon their proper gatekeeper role by overzealous prosecutors. We have moved far away from the original purpose for permit-

ting such evidence. The standard now seems to be: Will it help the prosecutor?

Finally, apparently the majority also thinks it was permissible to bring in the proverbial "kitchen sink" to show that Mr. McIntosh is a pervert who acted in a perverted way. Yet when Mr. McIntosh wanted to show that one of the complainants was also a troubled person, he had big problems doing so. I see a double standard here.

I repeat—this appeal is not about whether the defendant is factually guilty or innocent. Nor is it about whether he should be allowed to be a teacher—clearly, he should not. It is about the narrow issues of whether he had a fair criminal trial and how this Court continues to misapply *W.V.R.E.* 404(b). I believe the defendant clearly did not have a fair trial, and consequently, I dissent.[1]

---

1. I must comment that the majority opinion seems to have lapsed into an archaic 17th Century Puritan moral vocabulary, condemning "lustful advances and carnal pleasure," 207 W.Va. at 574, 534 S.E.2d at 770. Today we know that power and its abuse, fixations, fear, compulsion, and insecurity are at the core of most sexual misconduct—not the unchecked pursuit of sexual "pleasure" that the majority opinion implies to be at the root of the appellant's behavior.