# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-0172** (Greenbrier County 15-F-21)

**Jeffrey Einer Lewis,**
**Defendant Below, Petitioner**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey Einer Lewis ("Mr. Lewis"), by counsel James M. Cagle, appeals the order of the Circuit Court of Greenbrier County, entered on January 20, 2017, sentencing him to a period of incarceration for one to ten years upon his conviction of embezzlement. Respondent State of West Virginia appears by counsel Robert L. Hogan.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The John R. Dawkins Testamentary Trust ("the trust") was established with one million dollars subsequent to Mr. Dawkins' death in 1999 to provide for the care of Mr. Dawkins' adult son, Kay, who suffers from spina bifida malformation. Mr. Lewis, a certified public accountant with more than thirty years of experience, was made trustee by an order entered in 2010, subsequent to the removal of the prior trustee. In 2014, an agent of H.D. Vest Investment Services ("H.D. Vest"), where portions of the trust were held, reported to the Greenbrier Prosecuting Attorney that Mr. Lewis had written large-sum checks to himself from the H.D. Vest account.[1] A grand jury indicted Mr. Lewis in February of 2015 on one count of embezzlement by a fiduciary, in violation of West Virginia Code § 61-3-20, and one count of financial exploitation of an elderly person, in violation of West Virginia Code § 61-2-29b.

Prior to trial, Mr. Lewis filed a motion to dismiss the indictment on the ground that the funds petitioner was charged with embezzling were not entrusted for Kay, but were, in fact, a part of the residual estate that should have been distributed to Shriners Hospitals for Children ("Shriners") and the Hollowell Foundation, Inc. ("Hollowell"). Earlier, in July of 2014, Shriners and Hollowell, as residuary beneficiaries of Mr. Dawkins' estate, had sued Kay, the trust, the

---

[1]Though required to provide annual accounting to Kay, petitioner failed to do so after 2011.

1

successor trustee, and others, claiming that $2,749,853 derived from a mineral lease that was developed while Mr. Lewis was trustee belonged instead to the residual estate. Thus, Mr. Lewis reasoned, the indictment incorrectly named Kay as the victim. The circuit court denied the motion to dismiss the indictment.

At trial, Sgt. W.A. Pendleton of the West Virginia State Police testified about the investigation, and explained that the total amount taken by Mr. Lewis was $832,992.65, including $137,492.65 that petitioner had deemed a brokerage or "finder's" fee for his arrangement of the oil and gas lease. Kay testified that Mr. Lewis did not tell him that he had made loans to himself. Mr. Lewis testified that he made loans to himself, but that he had no intent to deprive the owner of property, and that he relied on a self-dealing provision of the trust as authority to do so.

The jury returned a verdict finding Mr. Lewis guilty of embezzlement. He was sentenced to serve one to ten years with the Division of Corrections, but the court permitted him to serve all but four months through the home incarceration program. The court's order specified that Mr. Lewis was to "make restitution of the balance of the funds taken by him as a 'finder[']s fee,' but a determination of the precise amount to be paid is deferred, pending further hearing with regard to the same." The court conducted that hearing in April of 2017, and took up Mr. Lewis's motion to eliminate the "brokerage" fee from the required restitution. Mr. Lewis's counsel argued that petitioner had repaid the "loans" that he took from the H.D. Vest account, with interest, to the court in the civil action, and that the amount repaid included the brokerage fee. The court found that the money claimed as a brokerage fee was not included in the loan amounts that petitioner offered to pay in the civil case and, inasmuch as petitioner had not earned a brokerage fee, the restitution order would stand. The circuit court's finding was confirmed in its "Order Concerning Restitution," entered on April 28, 2017.

On appeal, Mr. Lewis asserts three assignments of error. He argues, first, that the circuit court erred in excluding the testimony of an expert witness he disclosed. He argues, second, that the circuit court erred in "allowing the amendment of a material matter contained in the indictment without grand jury action." He argues, third, that the circuit court erred in ordering restitution of a certain amount of money which he had, he asserts, previously deposited.

We begin with the first assignment of error, wherein Mr. Lewis argues that the circuit court erred in excluding the testimony of his expert witness, attorney and certified public accountant Daniel Staggers. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991). Prior to trial, Mr. Lewis disclosed Mr. Staggers as an expert in elder law and special needs trusts, and the State filed a motion to exclude his testimony. At the motion hearing, Mr. Lewis's counsel explained the purpose of the proffered testimony:

> I'm offering him to testify about the fact that those who work in his field view [a particular clause in the trust instrument] as the exculpatory clause and that the exculpatory clause—the intersection of what Mr. Staggers does and what is involved in this case is the exculpatory clause. And if a person not a lawyer

reading that views it—or it can be interpreted as being that which was actually done, then, by golly, the jury's entitled to know that. . . . I offer him what that means to those who draft these such trusts and wills. That that is—to those people who draft it, that's an exculpatory clause.

We find that the interpretation of specific trust language is a matter best reserved to the courts. The circuit court was not clearly wrong in excluding expert testimony about the absence or existence of an exculpatory clause, which essentially would present a legal conclusion ostensibly premised upon particular underlying facts.

Next, we consider Mr. Lewis's argument that the circuit court improperly allowed the amendment of the indictment without returning the matter to the grand jury, because the change resulted in a material variance between the charges and the evidence necessary to sustain the conviction.[2] We have explained the importance of accuracy in the indictment:

> "The variance between the indictment and the proof is considered material where the variance misleads the defendant in presenting his defense to the charge and exposes him to the danger of being put in jeopardy again for the same offense." Syl. Pt. 7, *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982). . . .

---

[2] There is no evidence in the appendix record on appeal that the indictment was amended by leave of the court. We assume that Mr. Lewis is suggesting that a constructive amendment occurred by virtue of the conviction. Precisely, the indictment charged in Count 1:

> The grand jurors of the State of West Virginia, in and for the body of the county of Greenbrier, upon their oaths present that, between August 1, 2010 and March 31, 2014, in the said county of Greenbrier, JEFFREY EINER LEWIS, while acting in a fiduciary capacity with a person, and in so doing willfully and with intent to defraud, embezzled, misappropriated or fraudulently converted for his own benefit, or for the benefit of another, the assets or property, real or personal, with which he had been entrusted, or misused or misappropriated funds from the person to whom he owed a fiduciary duty or misuses (*sic*) any account, line of credit or credit card of the principal for purposes not contemplated by the fiduciary relationship, or for purposes not intended by fiduciary relationship. More specifically, between August 1, 2010 and March 31, 2014, in Greenbrier County, West Virginia, JEFFREY EINER LEWIS, while acting in the capacity of Trustee of the John R. Dawkins Testamentary Trust, established by the Last Will and Testament of John R. Dawkins, for the benefit of the named beneficiary, John Kay Dawkins, did willfully and with intent to defraud[,] embezzle, misappropriate and fraudulently convert to his own benefit, or the benefit of others, funds from the estate of the aforesaid trust, with which he had been entrusted, and did further misappropriate said funds from the person to whom he owed a fiduciary duty, and did for purposes not intended by the fiduciary relationship. The total amount of funds embezzled, misappropriated or fraudulently converted as aforesaid was at least $832,992.65. Such act was against the peace and dignity of the State of West Virginia and in violation of West Virginia Code § 61-3-20(a).

"If the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment. If the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury. However, if the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error." Syl. Pt. 3, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996).

Syl. Pts. 15 and 16, *State v. McIntosh*, 207 W. Va. 561, 534 S.E.2d 757 (2000). Though petitioner argues that Kay was incorrectly identified as the victim because funds were wrongly diverted from the intended beneficiaries into the trust, there is no evidence in the appendix record on appeal that Mr. Lewis was misled, subjected to an added burden of proof, or prejudiced in any way by a misnomer, if any, of the victim in his indictment. It was at all times clear that Mr. Lewis was accused of embezzlement, regardless whether funds were misdirected. The indictment charged embezzlement, and it was therefore also clear what actions would support a conviction for that crime:

"The essential elements of embezzlement are a trust relationship to the property or money involved, belonging to someone else and in the possession of the defendant by virtue of his office and converted to his own use with intent to defraud." Syl. Pt. 19, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Serv., Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

*State v. Berry*, 239 W.Va. 226, 800 S.E.2d 264, 267 (2017). Mr. Lewis was engaged in a trust relationship with property belonging to someone else. He was in possession of that property, even if it belonged to Hollowell or Shriners, by virtue of his office. It was proved at trial that he converted that property to his own use with the intent to defraud. Mr. Lewis was found guilty of the precise crime with which he was charged. We find that the indictment was sufficient on its face.

Finally, we consider Mr. Lewis's assertion that the evidence of record did not support the circuit court's order that Mr. Lewis's restitution obligation should include the $137,492.65 that Mr. Lewis retained for himself as a "finder's fee" for his part in the execution of the oil and gas lease on behalf of the trust. This assignment of error, Mr. Lewis avers, is based on two salient facts; first, that the State, when proceeding on the restitution issue, "had proved that as far as the State knew from calculations all embezzled funds were paid," and, second, that civil litigation concerning these issues is ongoing and, thus, damages are not yet determined. We review orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. Syl. Pt. 1,

4

*State v. Lucas*, 201 W.Va. 271, 273, 496 S.E.2d 221, 223 (1997). We find no abuse of discretion by the circuit court, which made a specific finding in its April 28, 2017, order that

> [t]he payments made by Mr. Lewis . . . were characterized by him in that case as being for repayment of loans and not for a finder[']s or broker[']s fee. Mr. Lewis has not repaid the $137,492.65 he withdrew from the [t]rust as a finder[']s fee. . . . Mr. Lewis performed no services to earn $137,492.65 as a finder[']s fee or broker[']s fee.

We agree with the circuit court that there was no evidence that Mr. Lewis earned a fee for his part in the oil and gas lease, inasmuch as the trial evidence showed that the lessee contacted him, prompting Mr. Lewis to take action apparently outside the scope of his authority. We further find no evidence on the record of payments made by him, and we are not persuaded that the outcome of the civil litigation would affect the restitution necessitated by Mr. Lewis's criminal conduct.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISQUALIFIED:**

Justice Menis E. Ketchum