**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

September 2016 Term

_____

No. 15-0537

_____

**FILED**

**September 23, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

v.

**GARY A.,**
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Mingo County
The Honorable Miki J. Thompson, Judge
Criminal Action No. 14-F-74

**AFFIRMED**

_____

Submitted: September 14, 2016
Filed: September 23, 2016

James M. Cagle, Esq.
Charleston, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
David A. Stackpole, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      "Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment."  Syl. Pt. 2, in part, *Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

i

**Chief Justice Ketchum:**

The Petitioner, Defendant below, Gary A.,[1] appeals a March 10, 2015, jury verdict of the Circuit Court of Mingo County finding him guilty on two counts of sexual assault in the first degree and two counts of sexual assault by a person in a position of trust. On the facts presented in this case, we find the circuit court committed no reversible error. Therefore, we affirm his March 10, 2015, convictions.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant is accused of sexually assaulting L.M., his seven-year-old niece, in late summer 2012 while she and two of her brothers were left alone with him one night in his house. L.M. testified that she was sitting on the Defendant's lap when he started rubbing her vaginal area over her clothing and then took her hand and stuck it down his pants. At the time, there was a blanket covering them from the neck down. L.M.'s then twelve-year-old brother witnessed questionable hand movement under the blanket.

Upon learning that the Defendant may have sexually assaulted L.M., her mother made a report to law enforcement and took L.M. to be interviewed by child protective services. L.M. told child protective services about the Defendant touching her private area over her clothing and making her touch his private area. The Defendant was

---

[1] Because the victim is related to the Defendant, we refer to him by the initial of his last name. *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); W.VA. R. APP. P. 40(e)(1).

thereafter arrested for L.M.'s sexual assault, at which time he denied inappropriately touching L.M.

At trial, the State presented testimony from L.M. and her brother, who recounted what transpired on the night of L.M.'s sexual assault. L.M.'s mother also testified, claiming that L.M.'s behavior drastically changed after the night in question. For example, she excessively washed her hands, was obsessed with "being clean on the inside," and would get dressed and undressed in the room furthest from the Defendant's house. The jury also heard from two adult witnesses, both of whom are related to the Defendant and testified that he sexually assaulted them when they were children.

On March 10, 2015, the jury found the Defendant guilty on each of the four charges: two counts of sexual assault in the first degree and two counts of sexual assault by a person in a position of trust. He was sentenced to an effective term of thirty to ninety years in prison. He now appeals his jury convictions to this Court.

## II.
## ANALYSIS

The Defendant challenges the circuit court's admission of testimony under West Virginia Rule of Evidence 404(b); its instructions to the jury; a comment the circuit court made regarding the child victim, L.M., as a witness; and the sufficiency of the evidence to support his convictions. We address these assignments of error in turn.

### A. Rule 404(b)

The Defendant first argues the circuit court erred in admitting evidence of his "other misconduct" under West Virginia Rule of Evidence 404(b). Before trial, the

2

circuit court concluded that two adult relatives of the Defendant, Amanda R. and Sabrina R., would be allowed to testify that he sexually assaulted them when they were little girls to prove that he had a lustful disposition towards children when he sexually assaulted L.M.

Amanda R., age thirty years old, testified that when she was around L.M.'s age, she woke up from a nap at the Defendant's house to find his hand on her vagina over her clothing. Sabrina R., forty-seven years old at the time of trial, testified that when she was around L.M.'s age, the Defendant forced genital-to-genital contact on her over her clothing and made her engage in oral sex with him in the house in which they were then living. Noting the time lapse between Amanda R. and Sabrina R.'s allegations and his 2012 indictment pertaining to L.M., the Defendant asserts their testimony was too remote in time to be admissible.

As to the admissibility of a defendant's other misconduct, West Virginia Rule of Evidence 404(b) [2012], provides, in part:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. [However,] (2) . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Moreover, evidence of a defendant's sexual assault of a child on a different occasion may be admitted to prove his/her lustful disposition towards children. As we have held:

3

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.[2]

Rule 404(b) does not specifically mention remoteness in time as a factor affecting admissibility of a defendant's other crimes, wrongs, or other acts. However, the remoteness of Rule 404(b) evidence, along with its similarity to a defendant's present charges, weighs on its probative value, as well as its danger of undue prejudice.[3] The "[t]iming of the Rule 404(b) bad conduct evidence should be a question of relevancy and prejudice under Rules 401-403."[4]

The circuit court's admission of Amanda R. and Sabrina R.'s testimony under Rule 404(b) is subject to the following standard of review:

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for

---

[2] Syl. Pt. 2, in part, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[3] *State v. McGinnis*, 193 W.Va. 147, 156 n.11, 455 S.E.2d 516, 525 n.11 (1994) (noting "the remoteness and similarity of the proffered evidence to the charged crime" are "factors to be considered by a trial court in conducting its balancing under Rule 403.").

[4] 1 LOUIS J. PALMER, JR., ROBIN JEAN DAVIS & FRANKLIN D. CLECKLEY, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS § 404.04[2][c] (6th ed. 2015).

a legitimate purpose. *Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.*[5]

Because the Defendant contends Amanda R. and Sabrina R.'s testimony was too remote in time to be admissible, his argument pertains to the third step in this analysis – whether the circuit court's conclusion that the evidence was more probative than prejudicial amounted to an abuse of discretion. Therefore,

> Our function on this appeal is limited to the inquiry as to whether the trial court *acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion.* In reviewing the admission of Rule 404(b) evidence, *we review it in the light most favorable to the party offering the evidence, . . . maximizing its probative value and minimizing its prejudicial effect.* [6]

"The balancing of probative value against unfair prejudice is weighed in favor of admissibility[.]"[7] Indeed: "As a general rule remoteness [of Rule 404(b) evidence] goes to the weight to be accorded the evidence by the jury, rather than to admissibility."[8]

Still, the Defendant argues that Amanda R. and Sabrina R.'s testimony should have been automatically excluded from evidence due to the time-lapse between

---

[5] *State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (emphasis added).

[6] *McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528 (emphasis added).

[7] *LaRock*, 196 W.Va. at 312, 470 S.E.2d at 631.

[8] Syl. Pt. 6, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982); *State v. McIntosh*, 207 W.Va. 561, 572, 534 S.E.2d 757, 769 (2000); *State v. Rash*, 226 W.Va. 35, 45, 697 S.E.2d 71, 81 (2010).

his sexual assault of them and his 2012 indictment pertaining to L.M. He contends, "On its face, such old evidence should have been disallowed."[9] We disagree.

The Defendant's argument for automatically excluding Amanda R. and Sabrina R.'s testimony is flawed for two reasons: (1) it attempts to place a definite time-limit on how remote is "too old" for Rule 404(b) evidence; and (2) it assumes that remoteness in time of Rule 404(b) evidence, in itself, is sufficient to render it inadmissible. We have been clear that "no exact limitation of time can be fixed as to when prior acts are too remote to be admissible."[10] Accordingly, we have found a circuit court did not abuse its discretion in admitting Rule 404(b) evidence which occurred twenty-one years before the incidents giving rise to a defendant's indictment.[11] Other jurisdictions have found even greater time lapses insufficient to render Rule 404(b) evidence inadmissible.[12]

---

[9] Petitioner, Defendant's Reply Brief at 4.

[10] *McIntosh*, 207 W.Va. at 572, 534 S.E.2d at 768 (quotations and citations omitted).

[11] *State v. Parsons*, 214 W.Va. 342, 347 & 350, 589 S.E.2d 226, 231 & 234 (2003) (finding circuit court did not abuse its discretion by admitting evidence that defendant, a teacher, sexually assaulted other female students starting in 1959 when the defendant's present charges arose out of 1977 to 1980).

[12] *See, e.g., People v. Cottone*, 195 Cal. App. 4th 245, 123 Cal. Rptr. 3d 892 (4th Dist. 2011) (Passage of 32 years did not render Rule 404(b) evidence of defendant's other sexual misconduct too remote.); *Bryson v. State*, 210 Ga. App. 600, 473 S.E.2d 352 (1996) (Passage of 31 years was not enough to render evidence of defendant's other sexual misconduct towards another child inadmissible).

Moreover, we have stated: "While remoteness in time may weaken the probative value of evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence."[13] Rather, Rule 404(b) evidence is rendered inadmissible by remoteness in time only when it is so far removed from a defendant's present charges that it has lost its probative value, such that the probative value no longer outweighs its danger of undue prejudice.[14] In determining whether Rule 404(b) evidence is too remote to be admissible, this Court "examines [all] the facts and circumstances of each case."[15]

Thus, we now turn to whether, after considering all the facts and circumstances of this case, the circuit court's admission of Amanda R. and Sabrina R.'s testimony was so arbitrary and irrational that it was an abuse of discretion. No abuse of discretion occurs when the evidence, despite its remoteness in time, was probative enough and not too prejudicial to prove the purpose for which it was offered into evidence. In comparing Rule 404(b) evidence's probative value to its prejudicial effect, we maximize its probative value and minimize its prejudicial effect.

---

[13] *McIntosh*, 207 W.Va. at 573, 534 S.E.2d at 769 (*quoting State v. Burdette*, 259 Neb. 679, 697, 611 N.W.2d 615 (2000)).

[14] *See* 1 LOUIS J. PALMER, JR., ROBIN JEAN DAVIS, & FRANKLIN D. CLECKLEY, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS § 404.04[2][c] ("Timing of the Rule 404(b) bad conduct evidence should be a question of relevancy and prejudice under Rules 401-403."). *See also Hart v. State*, 2002 WY 163, 57 P.3d 348, 356 (2002) ("Remoteness in time renders the evidence inadmissible only if the remoteness is so great that the evidence has no value."); *State v. Adams*, 220 N.C. App. 319, 328, 727 S.E.2d 577, 584 (2012) ("[T]he prior crime must not be so remote [in time] as to have lost its probative value.") (internal quotations and citations omitted).

[15] *LaRock*, 196 W.Va. at 312, 470 S.E.2d at 631.

The circuit court conducted two pre-trial, *in camera* hearings in which it heard testimony from Amanda R. and Sabrina R., and assessed whether their testimony would be admissible at trial. The circuit court thereafter concluded: "the evidence is relevant . . . as the evidence is similar in nature to the charged conduct in this matter by (1) the age of the female children; (2) that the children were female; (3) that the children were relatives; and (4) that the contact was similar in nature." The circuit court then considered the Defendant's objection to the remoteness in time of the evidence, and found that, "pursuant to Rule 403 of the West Virginia Rules of Evidence, . . . the probative value of the noticed Rule 404(b) evidence outweighs its prejudicial effect upon the Defendant."

The circuit court noted striking similarities between the Defendant's sexual assaults on Amanda R., Sabrina R., and L.M. Each of these victims were younger female relatives of the Defendant who were seven to ten years old at the time of their sexual assault. The sexual touching generally involved topical contact with the victim's genitals over her clothing and took place in the house in which the Defendant was living at the time. Significantly, as to Sabrina R., the sexual assault of Amanda R. in the intervening years enhanced her testimony's probative value. Likewise, in affirming the circuit court's admission of Rule 404(b) evidence in *State v. Rash*, 226 W.Va. at 42, 697 S.E.2d at 82, we stated: "The circuit court noted many striking similarities between the two offenses, including the physical characteristics of the victims, their age at the time of the offense, the fact that the Appellant's girlfriend was sleeping . . . when the alleged abuse

8

occurred." When we affirmed the circuit court in *State v. McIntosh*, 207 W.Va. at 574, 534 S.E.2d at 770, we noted: "The other bad act evidence in the present case involved substantially similar conduct, similar locations, similar circumstances, and similar methods to the offenses charged."

Under the facts and circumstances of this case, Amanda R. and Sabrina R.'s testimony was probative for the purpose of establishing the Defendant's lustful disposition towards children, and its probative value outweighed its prejudicial effect. Significant to this outcome are the striking similarities between the Defendant's sexual assault of Amanda R., Sabrina R., and L.M. Moreover, as to Sabrina R., the sexual assault of Amanda R. in the intervening years enhanced her testimony's probative value. The circuit court's admission of Amanda R. and Sabrina R.'s testimony was not so arbitrary and irrational that it was an abuse of discretion. Accordingly, we decline the Defendant's invitation to reverse his convictions on the ground of Rule 404(b).[16]

---

[16] The Defendant raises two additional assignments of error regarding the circuit court's admission of Amanda R. and Sabrina R.'s testimony under Rule 404(b): (1) he claims an excessive amount of time at trial was devoted to the Rule 404(b) testimony; and (2) he contends that because he was a juvenile when he sexually assaulted Sabrina R., admission of Sabrina R.'s testimony violated a public policy protecting his confidentiality. Both of these arguments fail.

In this case, the State presented only two Rule 404(b) witnesses, and a review of the record shows that the prosecution did not spend an inordinate amount of time on the substance of their testimony. Additionally, the Defendant has cited to no authority supporting his position that there is a public policy against introducing evidence of the uncharged sexual assaults he committed as a juvenile. He relies on West Virginia Code Section 49-5-17 – which was recodified in West Virginia Code Section 49-5-103 [2015] – and cases citing thereto to support his contention. The statute addresses the

## B. Closed-Circuit Jury Instruction

The Defendant next argues the circuit court improperly instructed the jury regarding his absence from the courtroom during L.M.'s testimony. Prior to trial, using the statutory procedure in West Virginia Code Section 62-6B-1, *et seq.*, to protect child witnesses, the circuit court determined that L.M. could testify by closed-circuit television outside the Defendant's physical presence. The Defendant elected to leave the courtroom during L.M.'s testimony, which, under Section 62-6B-1, required L.M. to testify in the courtroom before the jury.[17]

When a defendant elects to leave the courtroom prior to a child's testimony under Section 62-6B-1, the defendant is entitled to a jury instruction that his/her absence from the courtroom is solely for the child's convenience and for the jurors to infer anything else would be a violation of their oath. West Virginia Code Section 62-6B-4(c) [2013] provides:

> In every case where the provisions of the article are used, the jury, at a minimum, *shall* be instructed, *unless such instruction is waived by the defendant*, that the use of live,

confidentiality and public disclosure of juvenile records arising from charged offenses. It in no way affects the admissibility under Rule 404(b) of *uncharged* offenses committed as a juvenile in an adult criminal proceeding. *See generally Young v. State*, 106 So. 3d 775, 778 (Miss. 2012) (Rule 404(b) evidence that defendant, now thirty-five years old, sexually assaulted another child when he was fifteen years old was admissible, given the similarity of the sexual assault to the defendant's present charges.). Therefore, under the facts of this case, the circuit court did not violate public policy by admitting Sabrina R.'s testimony that he sexually assaulted her when he was a juvenile.

[17] W. VA. CODE § 62-6B-4(b)(2) [2013].

10

closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors.[18]

The Defendant had already left the courtroom by the time L.M. was called to the witness stand. Before her direct examination, the circuit court instructed the jury as follows:

[I]f you will notice, [the Defendant] is not in the courtroom at this time. He has elected to appear by closed circuit during the testimony of this particular witness. He will be returning to the courtroom when her testimony is finished.

The circuit court did not instruct the jury that the Defendant's absence from the courtroom was solely for L.M.'s convenience and that to infer anything else would be a violation of the oath taken by the jurors. The Defendant claims that he never waived, expressly or impliedly, his right to the jury instruction outlined in Section 62-6B-4(c), even though he did not raise an objection at trial or tender an instruction corresponding to Section 62-6B-4(c).

He now argues that this Court should reverse his convictions on the ground of the circuit court's failure to follow Section 62-6B-4(c)'s unambiguous terms. We have held: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2)

---

[18] Emphasis added.

11

that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."[19]

In response, the State asserts the Defendant waived his right to Section 62-6B-4(c)'s jury instruction. It calls our attention to the following discourse between the circuit court and the Defendant's counsel,[20] which occurred outside the jury's presence but before the Defendant left the courtroom:

> COURT: [Counsel], do you want me to instruct the jury as to what's going on, where your client is, etcetera? I will give them a special instruction if you will write that out. I will tell them what you want me to tell them or what you fashion on your own, either way.
>
> COUNSEL: If you've got something;
>
> COURT: I don't have a written instruction, . . . but I'm going to tell the jury what you want me to tell them, if anything. If you don't want me to tell them anything I won't. It will be your choice as to what you want me to do and to what extent you want me to –
>
> COUNSEL: I'll defer to the Court. I guess they would wonder what happened to [the Defendant] and *just say pursuant to the Rule he's elected to absence [sic] himself from the courtroom during the testimony of the child.*[21]
>
> COURT: I can tell the jury that – You're saying to just tell them that he's elected to be absent from the courtroom during the child's testimony?
>
> COUNSEL: That's fine.

---

[19] Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

[20] The Defendant's counsel on appeal did not represent him before the circuit court.

[21] Emphasis added.

Shortly thereafter, the Defendant was escorted, as agreed, to another room where he had electronic means of communicating with his lawyer and viewing L.M.'s testimony by closed-circuit television. After ensuring the Defendant had communication with his lawyer, the circuit court continued the conversation:

> COURT: [Counsel], have you decided what you want me to say to the jury?
>
> COUNSEL: What we talked about before is fine. Just tell them pursuant to the Code he's elected –
>
> COURT: That the Defendant has elected to be out of the presence of the witness?
>
> COUNSEL: Yes.

The jury then returned to the courtroom, and the circuit court gave the instruction, *as requested* by the Defendant's counsel, that he chose to leave the courtroom during L.M.'s testimony. Immediately thereafter, the circuit court asked the Defendant's lawyer if that instruction was sufficient, to which the Defendant's lawyer again responded, "yes."

In short, the record is clear that the Defendant's lawyer told the circuit court how he wished the jury to be instructed. He actively contributed to the deviation from Section 62-6B-4(c). Now, he seeks reversal on that ground.

We have stated: "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on

13

appeal."[22]  In a similar case, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we rejected a defendant's assertion that the circuit court committed plain error by failing to properly instruct the jury.  In that case, we noted that: "[T]he trial court asked defense counsel whether he wanted to offer any instructions. . . . counsel for the defendant explicitly stated to the trial judge that he was satisfied with the instructions as proposed by the court and that he had no objection to any portion of the jury charge."[23]

The record is clear that the Defendant waived his right to the jury instruction under Section 62-6B-4(c).  Therefore, the circuit court did not commit plain error by failing to provide it.

### C.  Circuit Court's Comment on L.M.'s Competency

The Defendant's next assignment of error also pertains to L.M. as a witness.  While L.M. was on the witness stand, but immediately before her cross-examination, the circuit court commented: "[T]he Court will make a finding that [L.M.] is a competent witness and knows the difference between the truth and a lie."  There was no objection by either party to the competency of the child as a witness; therefore, the comment by the judge was unnecessary and gratuitous.

The Defendant asserts the circuit court's comment was an impermissible credibility determination. The Defendant did not timely object to the comment, but he asserts it is a ground for this Court to reverse his convictions under our "plain error"

---

[22] *McIntosh*, 207 W.Va. at 572, 534 S.E.2d at 768 (quotations and citations omitted).

[23] *Miller*, 194 W.Va. at 17, 459 S.E.2d at 128.

14

doctrine.  "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."[24]

We disagree that the circuit court's comment on L.M.'s competency was a credibility determination, thus meriting reversal under our "plain error" doctrine.  The statement that L.M. knew the difference between the truth and a lie went to her competency to testify, not her tendency to tell the truth.  As we have stated: "the tests of the competency of a young child witness consist of the following: . . . (5) an understanding of the obligation to speak the truth on the witness stand."[25]

Our conclusion on this matter might have been different had the circuit court commented on L.M.'s credibility or stated that L.M.'s testimony would be truthful.  But it said nothing of the sort.  On the record, we find the circuit court committed no plain error in its unobjected-to finding that L.M. was a competent witness who knew the difference between the truth and a lie.

### D.  Sufficiency of the Evidence

The Defendant was convicted on four charges: (1) two counts of sexual assault in the first degree under West Virginia Code Section 61-8B-7 [2006], and (2) two counts of sexual assault by a person in a position of trust under West Virginia Code Section 61-8D-5 [2010].  To support the Defendant's convictions under Section 61-8B-7,

---

[24] Syl. Pt. 7, *Miller*, 194 W.Va. 3, 459 S.E.2d 114.

[25] *State v. Jones*, 178 W.Va. 519, 521 n.2, 362 S.E.2d 330, 332 n.2 (1987) (citation omitted).

the State had to prove that he, "being fourteen years old or more, subject[ed] another person to sexual contact who is younger than twelve years old."[26] As to his convictions under Section 61-8D-5, the State had to prove that he subjected L.M. to sexual contact while he was a "parent, guardian, or custodian of or another person in a position of trust in relation to [her]."[27] His final assignment of error is that the evidence against him was insufficient to support convictions under either of these statutes.

In assessing the Defendant's attack on the sufficiency of the evidence, we abide by the following standard of review:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.[28]

As to his conviction for sexual assault in the first degree under Section 61-8B-7, the Defendant argues the State failed to prove the element of "sexual contact." He

---

[26] W. VA. CODE § 61-8B-7(a)(3).

[27] W. VA. CODE § 61-8D-5(a).

[28] Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

16

contends the only first-hand evidence that he subjected L.M. to sexual contact was her own testimony. He notes several minor inconsistencies in L.M.'s story, and he claims her testimony might be, in part, the product of coaching.

We have held: "A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury."[29] Despite the Defendant's accusation that L.M. was coached, the record contains no basis to find L.M.'s testimony was inherently incredible. She testified at trial that the Defendant touched her vaginal area over her clothing and caused her to touch his private area as well. The State also produced testimony from L.M.'s mother regarding her change in behavior after the night in question, L.M.'s brother regarding questionable hand movement under L.M.'s blanket when she was sitting on the Defendant's lap, and an excerpt from L.M.'s journal in which she wrote about the Defendant sexually assaulting her. Thus, the jury had a sufficient evidence to find that the Defendant subjected L.M. to sexual contact.

The Defendant also argues the State had insufficient evidence to convict him under Section 61-8D-5. This statute imposes enhanced punishment for acts of sexual assault by "parent[s], guardian[s] or custodian[s] or other person[s] in a position of trust in relation to a child under his or her care, custody or control."[30] At trial, there was testimony that the sexual assault occurred at the Defendant's house, when he was left

---

[29] Syl. Pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981).

[30] *State v. Longerbeam*, 226 W.Va. 535, 538, 703, S.E.2d 307, 310 (2010) (brackets in original).

alone with L.M. and two of her brothers (the oldest being twelve years old). The Defendant asserts that the care, custody, and control of L.M. rested with her twelve-year-old brother.

We have held: "The question of whether a person charged with a crime under West Virginia Code § 61–8D–5 (2010) is a custodian or person in a position of trust in relation to a child is a question of fact for the jury to determine." When sexual assault of a child occurs at a defendant's residence while he/she is supervising the child, that instance may be relied upon to establish that the defendant was a "person in a position of trust," in the context of West Virginia Code Section 61-8D-5 [2010].[31] The testimony of L.M., her brother, and her mother, as found credible by the jury, was that the Defendant sexually assaulted L.M. at his house while watching her in a supervisory capacity. Therefore, the jury had a sufficient basis to find that the Defendant was a "person in a position of trust" in relation to L.M., and the evidence was sufficient to support his conviction under Section 61-8D-5.

### III.
### CONCLUSION

---

[31] *Longerbeam*, 226 W.Va. at 541-42, 703 S.E.2d at 313-14 ("[T]he only evidence that the State relies upon as proof that Appellant occupied the temporally relevant status of a 'person in a position of trust' with regard to the victim on the date in question is *prior* instances of supervision of Marissa G. that took place at the residence of Appellant and his wife. . . . [T]hose instances could be relied upon to establish that there were occasions when Appellant was responsible for the 'general supervision' of the victim's 'welfare[.]'").

On the facts presented in this case, we find the circuit court committed no reversible error. Therefore, we affirm his March 10, 2015, convictions.