# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 17-0170** (Randolph County 14-F-117)

**Wilfred H.,**
**Defendant Below, Petitioner**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Wilfred H.[1], by counsel Jeremy B. Cooper, appeals his August 3, 2016, conviction on five counts of first degree sexual assault, one count of display of obscene matter to a minor, and two counts of third degree sexual assault. Respondent State of West Virginia, ("State") by counsel Sarah B. Massey, filed a response in support of the circuit court's order. Petitioner filed a reply and, by leave of this Court, respondent filed a sur-reply.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standards of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2014, petitioner was indicted by a Randolph County Grand Jury on thirty-seven counts of first degree sexual assault; twenty-three counts of third degree sexual assault; and two counts of display of obscene matter to a minor. The indictment alleged that over the course of four years, petitioner committed a "series of sexual acts" upon M.A.H., beginning when M.A.H. was nine years old. In 2012, when M.A.H. was thirteen years old, she disclosed the alleged abuse in a note directed to a classmate that was intercepted by school personnel. During the investigation into M.A.H.'s allegations, she identified petitioner as her abuser.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. See *In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] By order entered March 5, 2018, this Court granted respondent's motion to file a sur-reply.

1

Petitioner was interviewed and, at the request of law enforcement officers, provided several of his electronic devices, including his cellular telephone, for analysis. Subsequently, petitioner's electronic devices were sent to the State Police Crime Lab, where two grainy photographs, both depicting a different young nude female, one of which was believed to be M.A.H., were discovered.

During pre-trial proceedings, petitioner sought leave of court to cross-examine M.A.H. as to her sexual history, in exception to the rape shield law. Petitioner reasoned that given the physical evidence that M.A.H.'s hymen was not intact, he was permitted to cross-examine her on the subject of whether she had engaged in sexual activity with other persons, which could provide an alternate explanation for her hymen that did not involve petitioner. Further, petitioner noted that the victim had made a statement on social media regarding the age of her oldest sexual partner and identified that partner as being seventeen years of age. Petitioner alleged that this statement was a party admission and demonstrated that the victim was untruthful in her statements that she had sex with petitioner, who was well over the age of sixteen.

Following a September 30, 2015, hearing, the court allowed petitioner additional time to gather relevant evidence in support of his motion. At the second hearing, on January 15, 2016, petitioner indicated that he did not have any additional evidence or arguments. Thereafter, the court determined that evidence establishing that M.A.H.'s hymen was not intact was not tantamount to evidence that M.A.H. had sex with other individuals, nor was it evidence that M.A.H. had sex with petitioner. By order dated February 10, 2016, the circuit court denied petitioner's motion to permit cross-examination of M.A.H. regarding this issue.

On February 23, 2016, the State filed a supplemental witness disclosure identifying Corporal Loudin, a veteran West Virginia State Police officer and member of the Crimes Against Children Unit, as an expert witness on the issue of protocol and interviewing techniques of child assault victims. In response to this supplemental disclosure, petitioner moved the court, in limine, to determine the admissibility of such testimony. On May 23, 2016, the circuit court held a hearing on petitioner's motion and ruled that Corporal Loudin could provide the anticipated expert testimony. However, the court noted that Corporal Loudin was specifically "precluded from offering testimony as to the truth of M.A.H's responses."

During the course of discovery, the State filed a notice of intent to use evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence. Specifically, the State sought to introduce both the testimony of E.W., a prior alleged victim of petitioner, and a photograph found on petitioner's cellular telephone depicting another young nude female who was not the victim herein. A hearing was held on the State's notice on March 24, 2016, during which, E.W., a childhood friend of petitioner's eldest daughter, testified that petitioner "had touched her inappropriately [upon the breasts] one time when she was around the age of ten or eleven." E.W. testified that petitioner advised her that in payment for picking her up and transporting her to his home to play with his daughter, he was permitted to touch her breasts. In response to E.W.'s testimony, petitioner called his daughter and another individual as rebuttal witnesses. After hearing the evidence and the arguments of counsel, the court found, by a preponderance of the evidence, that petitioner committed acts against E.W. and that the relevancy of her anticipated testimony outweighed the prejudicial effect. By order dated April 1, 2016, the court granted, in

part, and denied, in part, the State's notice of intent by permitting the testimony of E.W. and prohibiting the introduction of the photograph.

The trial of petitioner's case began on January 28, 2016. Following jury deliberations, the foreman advised the circuit court that the jury was unable to reach a unanimous verdict and was deadlocked. The court declared a mistrial and scheduled jury selection for a second trial to begin on April 12, 2016. The second trial began on August 1, 2016. Under direct examination, M.A.H. testified that from ages nine through thirteen, she spent most weekends at petitioner's home and was close to petitioner's daughter. M.A.H. provided explicit details regarding petitioner's actions and testified that petitioner took photos of her in the nude. M.A.H. was then shown a photograph of a nude child and identified herself as the child in the photograph. Over petitioner's objection, the photograph was published to the jury, but was not admitted as evidence.

During the presentation of its case-in-chief, the State called Trooper Hevener of the West Virginia State Police to testify regarding the electronic devices removed from petitioner's home. Under cross-examination, Trooper Hevener acknowledged that the electronic devices were returned to him from the State Police Crime Lab after testing and sat unguarded on his desk for a period of approximately five months. The State then rested its case-in-chief. The court subsequently sequestered the jury and counsel for petitioner made a motion for a mistrial, arguing that the two photographs discovered on petitioner's electronic device were not "charged in the indictment" and the chain of custody for petitioner's electronic devices, on which the photographs were discovered, could not be established. The circuit court denied petitioner's motion and reasoned that the victim identified one of the photographs in her testimony; however, the court acknowledged that the chain of custody for the electronic devices had not been established. Accordingly, the court advised the parties that the jury would be instructed to disregard the photo.

Petitioner then presented three motions for judgment of acquittal. The motions were based on petitioner's "incredible" testimony, insufficient evidence as to elements of obscenity, and insufficient evidence as to all counts based on the State's failure to prove petitioner's age. The court found that the victim testified that there had been sexual intercourse during the times alleged in the indictment and several of the State's witnesses had testified as to petitioner's age. As to the claims that the State offered insufficient evidence to sustain the obscene matter charge, the court found that the victim's description of the photograph was sufficient evidence. Accordingly, the court denied each of petitioner's motions for judgment of acquittal.

The jury returned to the courtroom and a curative instruction was read by the court. In that instruction, the court advised the jury that the chain of custody "was not met" with respect to the photograph and instructed the jury to "totally disregard anything concerning the cell or the picture of the cell phone or her identity of this picture. That is no longer part of this case."[3]

---

[3] The court specifically instructed the jury as follows:

Ladies and Gentlemen, the State has rested now, and it's now time that the defendant … will have the opportunity to present evidence, if he so desires.

Now… you'll know that there's been arguments about picture or the chip on the

(continued . . .)

3

Immediately prior to the jury's deliberation, the court again instructed the jury to "[d]isregard entirely questions and exhibits to which an objection was sustained and answers or exhibits stricken out of evidence. Do not draw any inferences therefrom or speculate as to the matters hereby hinted."

On August 3, 2016, petitioner was convicted of five counts of first degree sexual assault, one count of display of obscene matter to a minor, and two counts of third degree sexual assault. The jury was unable to reach a unanimous verdict as to the remaining forty-nine counts of the indictment. On August 13, 2016, petitioner filed post-trial motions, including a renewed motion for mistrial. On November 10, 2016, the court held a hearing on post-trial motions, and by subsequent order, dated March 17, 2017, all post-trial motions were denied by the court. The court found that petitioner "received a fair trial" and noted that the court did "not believe that the [post-trial] motions raise issues which would cause the court to grant the relief requested." It is from his August 3, 2016, conviction that petitioner now appeals.

On appeal, petitioner asserts ten assignments of error, which we will address in turn. However, we generally note that

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the

---

cell phone and its chain of custody and things of that nature. And you've heard at the end of the first part of the trial that the trooper had, unfortunately, left the phone on his desk for five months.

Now, chain of custody is not one of these technicalities that doesn't mean anything. It is a serious factor. … It's why each trooper has the trooper's temporary evidence locker that only he can enter, so that there can only be a chain of custody from the left hand to the right hand to your hand to your hand and on down. That was not done in this case.

Now … that in and of itself is not charged as a crime in this case. There is no count that says that this [the taking of the photo] was a crime. That was submitted into evidence as corroborative or supportive evidence, but it's not itself a crime. So based upon this deficiency of failure to maintain the chain of custody, this court cannot dismiss a count or something, because there is no count that specifically deals with it. But, as you recall, the witness identified that picture as being a picture of her.

Now, since we don't know because of the lack of chain of custody whether that was in fact the cell phone, the picture, all of these other things, what I'm going to do is instruct you to totally disregard her identification of that picture, totally disregard anything concerning the cell phone or the picture of the cell phone or her identity of this picture. That is no longer part of this case.

4

circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

In his first assignment error, petitioner argues that the circuit court erred in denying his motion for a mistrial. We have long held that

[t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

*State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008) (citations omitted).

Petitioner contends that the circuit court erred in failing to declare a mistrial when an inherently prejudicial photograph depicting a young nude female, purported to be the victim, was published to the jury. The State argues that the circuit court did not err in refusing to declare a mistrial following publication of the subject photograph, as the victim identified herself as the young female in the photograph so published and as petitioner was not charged related to the photograph itself. Based upon our review of the record, we agree with the State. Here, the court, as was within its sound discretion, sustained petitioner's trial objection regarding the publication of the photograph and read a curative instruction to the jury that specifically advised the jury not to consider such evidence. Under the limited facts and circumstances of this case, as the circuit court provided a curative instruction to the jury related to the publication of the photograph at issue, without specific objection as to the instruction from the parties, we find no error. We further concur with the State and note that the record below is replete with other evidence to support petitioner's convictions, without reference to the photograph at issue.

Next, petitioner argues that the circuit court erred in failing to order a new trial given the State's failure to disclose issues with regard to the chain of custody related to the photograph at issue until the second trial, which violated petitioner's rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This Court has held that

[a] claim for violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), presents mixed questions of law and fact. Consequently, the circuit court's factual findings should be reviewed under a clearly erroneous standard, and questions of law are subject to a *de novo* review.

Syl. Pt. 7, *State v. Black*, 227 W. Va. 297, 708 S.E.2d 491 (2010).

In order to establish a claim for a constitutional due process violation under *Brady*, this Court has held that three components must be established: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, in part, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007).

Here, petitioner contends that is it clear from Trooper Heavener's trial testimony that petitioner's electronic devices remained on his desk, unprotected, for a period of five months. It is undisputed that the State never disclosed this information to petitioner and that petitioner remained unaware of any defect in the chain of custody until the second trial. Petitioner argues that had he known of the "defect" prior to trial, it would have been possible to litigate and determine the admissibility of the photograph before any prejudicial exposure.[4]

Conversely, the State argues that the circuit court correctly found there was no *Brady* violation herein. We agree with the State and find that petitioner did not satisfy his burden in establishing that a *Brady* violation occurred. Under the limited facts and circumstances of this case, we conclude that the alleged defect in the chain of custody was not material, as it did not directly go to proving any count against petitioner. Accordingly, we find the circuit court did not err in this regard.

In his third assignment of error, petitioner argues that the circuit court erred in denying his motion to suppress evidence gathered as a result of his November 13, 2012, interview with law enforcement officers, and subsequent production of his electronic devices. Petitioner contends that consent to his interview and production of his electronic devices was given only after law enforcement officers inaccurately represented that they had the authority to have warrants issued and that they could have petitioner arrested. This Court has held that

> [w]hen reviewing a rule on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

Petitioner alleges that the law enforcement officers did not have the proper authority to obtain warrants to secure petitioner's electronic devices as no exigent circumstances existed and their representations to him otherwise were improper. Accordingly, petitioner argues that the

---

[4] Petitioner acknowledges his belief that the State did not have any actual knowledge of the chain of custody issue prior to the second trial but asserts that the most appropriate relief to remedy the circuit court's error in this regard is to reverse petitioner's convictions and remand the case for a new trial.

circuit court erred by not suppressing any evidence obtained as "fruit" from the November 13, 2012 interview.

The State argues, and we concur, that petitioner's argument fails in light of the record. Here, construing all facts in the light most favorable to the State, we find that petitioner readily agreed to allow the officers to take his electronic devices for analysis. The court held a series of hearings on petitioner's motion to suppress on September 2, 2015; September 29, 2015; and January 11, 2016. Thereafter, the court ruled that within the context of the entire discussion between petitioner and law enforcement officers the officers' statements to petitioner wherein they advised petitioner "he was not going to be arrested that night" and that they "did not have warrants," did not support petitioner's claim of coercion. As consent is an exception to the Fourth Amendment's warrant requirement, we find no merit to petitioner's argument that his consent resulted from coercion.[5] Based on the totality of the circumstances herein, petitioner willingly and voluntarily consented to the search of his home and seizure of his electronic devices. Accordingly, the circuit court did not err in denying petitioner's motion to suppress.

Petitioner next argues that the circuit court erred in permitting expert testimony from a law enforcement officer. At the trial below, Corporal Loudin was called to testify, and offered testimony regarding M.A.H.'s forensic interview. During his direct examination, a video of M.A.H.'s interview was played for the jury. In this video, M.A.H. identifies petitioner as her abuser. Following the presentation of the video, Corporal Loudin was asked "In your experience in that – in your position and with your training, is it your – what is your experience with regard to children disclosing every single thing that happened to them in the very first interview that's conducted?" Corporal Loudin responded by stating that "typically never happens" but went on to state that the details relayed by M.A.H. in her statement was an indicator that "this child is being honest in their disclosures." Petitioner's counsel objected that such testimony was in defiance of the court's pre-trial ruling as to the scope of Corporal Loudin's expert testimony. The State conversely argued that this testimony was in accord with the pre-trial rulings. Ultimately, the court provided a curative instruction to the jury, as follows:

> But now, as to the ultimate issue – and I'll instruct the jury that he's permitted to testify and I've ruled about his procedure and why he followed that procedure. Now, what he found as significant, he can testify to that.
>
> As far as the ultimate issue of whether or not he believed that the witness was honest or dishonest or truth or – or not truth, he cannot testify about that. Because that's for you to decide.

Petitioner argues that Corporal Loudin's testimony as to the tendency of his interrogation protocol to produce reliable statements was tantamount to impermissible witness advocacy, prejudicial to petitioner, and invaded the province of the jury. Conversely, the State argues that it did not purposefully elicit testimony from Corporal Loudin regarding the honesty or dishonesty of M.A.H.'s statement. The State asked Corporal Loudin a proper question, which he answered,

_____

[5] *See* Syl. Pt. 1, *State v. Buzzard*, 194 W. Va. 544, 461 S.E.2d 50 (1995).

7

after which he volunteered additional information. In response to Corporal Loudin's testimony, the Court took immediate and appropriate action and gave a curative instruction to the jury to disregard any testimony as the ultimate issue. *See State v. Jones*, 230 W. Va. 692, 742 S.E.2d 108 (2013).

This Court has previously held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). Here, based upon our review of the record, we find no error. The court properly provided a curative instruction to the jury, to which neither party objected, and acted within its discretion.

Next, petitioner argues that the circuit court further erred in permitting evidence to be introduced at trial, in violation of Rule 404(b) of the West Virginia Rules of Evidence. Specifically, petitioner contends that the circuit court erred by permitting Rule 404(b) testimony of a second purported victim of the petitioner, when the testimony related to an instance that was excessively remote in time and was more prejudicial than probative.

We disagree. Here, the State properly noticed its intent to introduce such evidence at trial for the purpose of establishing petitioner's lustful disposition towards children, and the appropriate pre-trial hearings were held. While petitioner is critical of the remoteness of time of the claims of E.W. against petitioner, this Court has held that the length of time between the Rule 404(b) evidence and the charged offense goes to the weight of the evidence rather than the admissibility of the evidence. *See State v. Gary A.*, 237 W. Va. 762, 791 S.E.2d 392 (2016). Accordingly, we find no error in the circuit court's denial of petitioner's motion for new trial on this ground.

Petitioner further argues in assignment of error number six that the circuit court erred in denying his motion to cross-examine the victim under an exception to the rape shield law.[6] Petitioner contends that pursuant to Rule 412 of the West Virginia Rules of Evidence he was permitted to cross-examine the victim related to her statements made on social media and regarding her hymen. The State argues that the trial court did not err in denying petitioner's ability to cross-examine M.A.H. regarding her previous sexual history.

We agree with the State. Here, the previous sexual conduct of the victim was not at issue. The victim's statement on social media regarding the age of her oldest sexual partner was not an exculpatory or contradictory statement. With regard to petitioner's proposed questioning of M.A.H. about her hymen, the court found that "specific instances of sexual behavior if offered to prove that someone other than the defendant was the source of the injury [to M.A.H.'s hymen]" could be admitted. We find that the circuit court thoroughly reviewed this issue, holding two separate hearings over a three-month period. The circuit court gave petitioner additional time to show some specific instance of the victim's sexual behavior, but petitioner conceded that he could not make any such showing. As such, the type of questioning requested by petitioner is

---

[6] *See* Syl. Pt. 2, *State v. Timothy C.*, 237 W. Va. 435, 787 S.E.2d 888 (2016).

exactly the type of questioning the rape shield law was designed to limit.[7] Accordingly, the circuit court did not err in its application of the rape shield law to prohibit petitioner from cross-examining the victim as to her hymen and her social media posts regarding the age of her sexual partners.

Petitioner argues in his seventh assignment of error that the circuit court erred in permitting the State to elicit irrelevant evidence of expert medical testimony. Specifically, petitioner contends that through the testimony of Dr. Catherine Chua the State attempted to lay a foundation for medical records concerning the fact that the alleged victim's hymen was not intact.[8] Petitioner argues that this ruling was contradictory to the court's other rulings that the physical state of the victim's hymen was "essentially meaningless." Petitioner contends that the admission of such evidence prejudiced him.

Here, we find no abuse of the circuit court's discretion in allowing the admission of such evidence. While such testimony is not absolute evidence of sexual assault, as Dr. Chua testified, the non-presence of a hymen could be a result of sexual assault. Accordingly, we find that under Rule 401 of the West Virginia Rules of Evidence, permitting the introduction of relevant evidence, the circuit court did not err.

In his eighth assignment of error, petitioner argues that the circuit court erred in its denial of petitioner's motion for judgment of acquittal on the basis of insufficient proof of an element of an offense in the indictment. This Court has found that

> """[u]pon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West,* 153 W.Va. 325, 168 S.E.2d 716 (1969).' Syl. pt. 1, *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974)." Syl. Pt. 10, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986).

Syl. Pt. 1, *State v. Rogers,* 209 W. Va. 348, 547 S.E.2d 910 (2001).

Here, petitioner argues that the jury did not have a sufficient factual basis to find that the element of petitioner's age was proven beyond a reasonable doubt. The State responds that there was sufficient evidence that petitioner was over the age of eighteen. Based on our review of the record, we agree with the State.

---

[7] *See* Rule 412 of the West Virginia Rules of Evidence, 2014 Comment on Rule 412.

[8] Dr. Chua, who examined the victim, testified that there are a number of reasons that a female's hymen may not be intact which include, but are not limited to, sexual conduct.

In syllabus point six of *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982), this Court noted that "[w]here the exact age is not required to be proved, the defendant's physical appearance may be considered by the jury in determining age but there must be some additional evidence suggesting defendant's age." At the time of his trial, petitioner herein was approximately forty seven years old. Jurors observed petitioner's physical appearance, which corresponded with his age, and heard testimony that he had been married and divorced and had daughters around the same age of the victim. Further, several of the State's witnesses, including Trooper Heavener and victim, testified that petitioner was over the age of eighteen. Accordingly, we find no error.

Petitioner additionally argues that the circuit court erred in its denial of petitioner's motion for judgment of acquittal as to the display of obscene matter charge due to insufficient factual proof of the elements of the crime. Conversely, the State argues that the record contained sufficient evidence to sustain petitioner's conviction. At trial, the victim testified that petitioner watched graphic pornography (showing two individuals having sexual intercourse) on television in her presence and that petitioner was the only individual in the room who could have put said pornography on the television. Accordingly, viewing the evidence in the light most favorable to the State, we find no error.

In his final assignment of error, petitioner contends that the circuit court's cumulative errors prejudiced him and necessitate the reversal of his convictions and award of a new trial. Our standard for reviewing a cumulative error argument was set forth in syllabus point five of *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972) ("Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."). Further, this Court has recognized that the cumulative error doctrine "should be used sparingly" and only where the errors are apparent from the record. *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 118, 459 S.E.2d 374, 395 (1995). Here, as we find no error, we find no merit in petitioner's argument for the application of the cumulative error doctrine.

Based on the foregoing, we find no error below and affirm petitioner's August 3, 2016 convictions on five counts of first degree sexual assault, one count of display of obscene matter to a minor, and two counts of third degree sexual assault.

Affirmed.

**ISSUED:** June 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating